**E. H. SPARKS, Plaintiff in Error,**

v.

**MIDLAND SUPPLY COMPANY, Inc. a corporation; Earl Moore; Don McDonald, doing business as McDonald Welding Service; Frank T. Melton; D. P. Bonham, doing business as Bonham Transfer; Dwight Jones, doing business as Dwight Jones Specialty; W. L. Hicks; J. D. Amsey, doing business as Amsey Construction Company; Production Engineering Laboratories of Bartlesville, Inc., a corporation; Lane-Wells Company, a corporation; Lee Morrison Supply Company, a corporation; Halliburton Oil Well Cementing Company, a corporation; and Osage Oil & Transportation Company, Inc., a corporation, Defendants in Error.**

No. 38008.

Supreme Court of Oklahoma.

April 21, 1959.

Rehearing Denied May 26, 1959.

Neptune & Stocker, by Robert H. Neptune, Bartlesville, for plaintiff in error.

Fleeson, Gooing, Coulson & Kitch, Wichita, Kan., Rosenstein, Fist & Mesirow, Tulsa, Rowland & Rowland, Richard K. Harris, Bartlesville, for defendants in error.

WELCH, Justice.

This is an action by plaintiff and intervenors to recover judgment against each of the defendants, Floyd Rathbun and E. H. Sparks, for materials furnished, and services performed by plaintiff and intervenors for certain oil and gas leases, and for foreclosure of liens upon certain oil and gas leases. Judgments were recovered by plaintiff and intervenors against each of the defendants, and the liens were foreclosed. Only E. H. Sparks has appealed from the judgments against him. The parties will be designated as they appeared in the trial court.

In this appeal the questions presented concern the existence or non-existence of a mining partnership as between E. H.

Sparks and Floyd Rathbun, and a contract with the plaintiff Midland Supply Co., Inc. a corporation, for the materials furnished by it.

The defendant has listed fifteen assignments of error, and argued them under three separate propositions, however, we are of the opinion that only two questions are presented for our consideration.

First, Is there competent evidence to sustain the trial court's finding that E. H. Sparks and Floyd Rathbun were mining partners as to the seven oil and gas leases involved in this action?

Second, Is there competent evidence to sustain the trial court's finding that E. H. Sparks entered into an oral contract with Midland Supply Company for the purchase of the materials, and the issuance of credit therefor, as to the seven oil and gas leases involved in this action, or as to any of them?

The parties to this appeal agree that in order to establish the existence of a mining partnership there must be co-ownership, co-operation and agreement to share profits and losses as to each lease.

The defendant Sparks admits that the Vaughn lease located in Nowata County is recorded under the joint ownership of Sparks and Rathbun, and that the Tyler lease located in Washington County is recorded in the name of Sparks. However, it is his contention that as to these two leases they were in his name as security for loans. Sparks further admitted that after he was repaid "out of the oil production" and Rathbun was "re-imbursed for all expenses he paid on the property" then, he, Sparks, "was to receive one-half of whatever the property produced." As to the other five leases Sparks claims he never did purport to have any interest in them or any contractual arrangements with Rathbun concerning them. He did admit as development of the leases progressed he was to receive an assignment of the production from "some of those leases. Whatever Rathbun might have production on," and that "Rathbun signed the statement assigning Sparks the runs off from these other leases he had."

A written contract was entered into between Rathbun and Sparks as parties of first part, and one Gus D. Hill as party of second part, wherein said contract refers to a certain oil and gas lease or leases in Washington and Nowata Counties, held by parties of the first part. Hill was to assist parties of first part in drilling upon leases, location to be selected by Rathbun. Said agreement further provided that parties of first part should be in full charge and complete control of drilling operations and marketing product. Sparks' testimony concerning this contract reveals that he was to receive twenty-five percent of the income from the lease after Hill got all of his money back, which was consideration for getting Hill to drill on it, and that they could have drilled on any of the leases. Only the Hart lease and the Walker lease carried 1/16th overriding royalty interests for the benefit of second party.

There were substantial financial contributions by Sparks during the period here involved. Sparks' own summary of advance by him to Rathbun from October 12, 1953, to June 5, 1954, showed a total of $25,939, including regular advances in the months of November, December, January, February, and May; these advances were for varying and unusual amounts ranging from $32.57 to $15,006.21.

On December 21, 1953, Max Beren, President of the plaintiff company, had a telephone conversation with Sparks, stating he had information concerning Sparks' extensive development program on leases, in conjunction with Floyd Rathbun, nearby the company's Bartlesville store. Sparks agreed that he was quite well pleased with the situation and it looked as though they would have valuable properties to develop. Beren solicited Sparks' business and was told by Sparks "he saw no reason why plaintiff shouldn't sell them some material." Upon furnishing a credit reference to Beren, Sparks advised that "Rathbun was to do the day-to-day buying in the area."

During the conversation Sparks requested that a copy of the invoices charged to the account be sent to him.

In March and June two other telephone conversations took place between Beren and Sparks relating to payments on the account. In each instance Sparks assured Beren he would attend to the matter. In these telephone conversations no mention was made of any specific leases; they were referred to as operations on leases in Bartlesville area. Rathbun, upon one occasion, introduced Sparks to one of intervenors as his partner.

The plaintiff in error Sparks contends that the trial court erred in finding a mining partnership to exist as between Sparks and Rathbun as to all of the seven leases, and cites as authority White v. A. C. Houston Lumber Company, 179 Okl. 89, 64 P.2d 908, wherein it was held that there should be a joint interest in the property, agreements express or implied, to share in the profits and losses of the venture, and actions and conduct showing co-operation in the project. It is his contention that the evidence is insufficient to establish the presence of all the above requirements.

█ It is a well-established rule of this court that where an action of legal cognizance is tried without a jury, judgment will be given same effect as verdict of properly instructed jury, and same will not be reversed if there is any evidence reasonably supporting the judgment. Continental Supply Co. v. Dickson Oil Co., 194 Okl. 660, 153 P.2d 1017.

█ In the case of McKay v. Kelly, 130 Okl. 62, 264 P. 814, we held:

"A mining partnership is not based upon any agreement, either express or implied, but arises from the relation of the parties independent of a purpose to form a partnership when two or more cotenants unite and co-operate in the development and operation of a mine or a mining claim by each one paying his proportionate part of the expenses and receiving his proportionate part of the profits or bearing his proportionate part of the losses."

In the case of Robinson Petroleum Co. v. Black, Sivalls & Bryon, Inc., 138 Okl. 128, 280 P. 593, 595, this court held:

"While it often has been held that an agreement to assign an interest in a lease in consideration of the drilling of a well thereon does not constitute a mining partnership, even though the agreement further provides that if the well is productive the cost of future development shall be borne by the parties in proportion to their respective interests, in each case so holding the determination of the whole matter rested upon the contract itself, and in such cases there was no evidence that the parties sought to be charged held themselves out as partners."

█ We are of the opinion that the evidence here reveals a joint interest to exist in all of the leases, although there was a recorded interest in only two of the seven leases. Sparks admitted he was to receive an assignment of some of the production, and that a signed statement by Rathbun had been executed assigning Sparks the runs from off these other leases recorded in the name of Rathbun. Although Sparks entered into a written contract as one of the parties with Hill to assist in drilling upon leases, he was willing for Rathbun to select the drilling site, which would indicate he had an equitable interest in all seven leases, and was to share in the profits from any one or all of them. Sparks furnished a credit reference and agreed to the charging of items against his credit by plaintiff for material furnished at the request of Rathbun. There is no evidence that the advancements in money made by Sparks were to be repaid by Rathbun, other than he was to share in the profits on a percentage basis. His advancements show he was sharing in the expenses of said operations. Sparks co-operated in obtaining the con-

tract with Hill, in obtaining credit with plaintiff, and in advancing financial aid for expenses.

The defendant also contends that the evidence of telephone conversation between plaintiff's President and defendant Sparks on December 21, 1953, should not have been admitted to establish contract entered into on that date, since pleadings allege that contract was entered February 1, 1954, and that the trial court erred in admitting same. No authority is cited to support this contention. The record fails to show that defendant was surprised, misled or prejudiced by the admission of this evidence.

■ Where a plaintiff in error does not support his contention by any authority, and record discloses there is no prejudicial error, and that substantial justice has been done, the judgment will be affirmed without discussing assignment in detail. Pendergraph v. Edwards, Okl., 283 P.2d 823; Reed v. United States Hoffman Machinery Corporation, 193 Okl. 370, 143 P.2d 809.

Under this same proposition it is argued that trial court erred in permitting plaintiff to amend its petition to conform with proof after all its evidence in chief had been presented, over defendant's objection.

We are of the opinion that the evidence was competent and material in order to establish the contract pleaded, since it concerned a telephone conversation relating to the contract and was later in the trial admitted by defendant. We cannot see where the variance as to date or time of telephone conversation, in view of other evidence, would materially affect rights of defendant, since he was afforded full opportunity to introduce testimony bearing on the subject of amendment.

■■ It is a general rule that amendments which do not introduce a new cause of action may be made to conform pleadings with proof at any stage of the trial. The exception to this general rule is where a proper objection has been raised to the introduction of evidence not admissible under the issues, a party will not be permitted after completion of the trial and the discharge of the jury to amend his pleadings on the claim that the amendment is to meet the proof. 41 Am.Jur. p. 505, Sec. 310.

Upon examination of the record presented we are convinced that this amendment comes under the general rule and not the exception, since evidence was admissible.

■ It is further contended by defendant that the contract between plaintiff and defendant was for furnishing material to the Tyler lease only, and that there was no evidence of record whereby defendant Sparks agreed to pay for materials furnished to the defendant Rathbun for development of any other leases than the Tyler lease.

The evidence is conflicting on this question; Sparks testified that in telephone conversation with Beren he specified the Tyler lease. Beren testified no specific leases were mentioned in any of his telephone conversations wtih Sparks, but that they discussed the general development in the Bartlesville area.

This conflict of testimony was for the determination of the trial court. Clark v. Addison, Okl., 311 P.2d 256.

■ In view of the fact that defendant informed plaintiff that Rathbun would do the day-to-day buying, and that he wanted copies of invoices of purchases made by Rathbun mailed to him, the only logical conclusion would be that unless plaintiff was advised otherwise by defendant, he was authorized to furnish materials upon Rathbun's request and charge to account of Sparks and Rathbun. There is nothing in the record indicating that plaintiff was ever advised otherwise.

In the case of Miller v. Dittmeier, Okl., 290 P.2d 765, 766, we held:

"Sufficiency of evidence to sustain judgment in action of legal cognizance will be determined in light of evidence tending to support same, together with

every reasonable inference deducible therefrom."

We are of the opinion, and so hold, that there is sufficient competent evidence to sustain the judgment of the trial court.

Judgment affirmed.