**ZONE OIL AND GAS COMPANY,**
Plaintiff in Error,

v.

**DUDLEY AND HEATH DRILLING COM-
PANY et al., Defendants in Error.**

No. 42174.

Supreme Court of Oklahoma.

Sept. 8, 1970.

William J. Otjen, Jr., Enid, for plaintiff in error.

Fitzgerald & Houston, Stillwater, W. W. Musser, Jr., Enid, for Dudley and Heath Drilling Co.

Frantz C. Conrad, Jr., Enid, Oklahoma, for Emanuel Lester.

Ronald G. Franklin, Enid, for Halliburton Company.

W. A. Blakeburn, Oklahoma City, for Magnet Cove Barium Corp.

David L. Field, Field & North, Enid, for Pool Well Servicing Co. of Oklahoma.

Lloyd McKnight, McKnight, Gasaway & McKnight, Enid, for Go Jet Services, Inc., Bill Strange dba Bill Strange Bit Service, Texas Propane Company, Inc. a corporation.

Glen H. Grubb, Monnet, Hayes, Bullis, Grubb & Thompson, Oklahoma City, for H & H Supply Co.

Clyde Collins, Belcher, Belcher & Collins, Enid, for Oil Field Rentals of Oklahoma, Inc.

William Bishop, Bishop & Wantland, Seminole, for Bryon Jackson, Inc.

Ross, Holtzendorff & Bond, Oklahoma City, for Phil A. Cornell, Inc.

Grove & Winters, Oklahoma City, for Bill Hodges Truck Co., Inc.

HODGES, Justice.

Plaintiff below, Dudley and Heath Drilling Company, sought foreclosure of a mechanic's and materialmen's lien on an oil and gas well. Joined as defendants were other lienholders, together with the owner of the leases upon which the well was drilled to a deeper sand, and the assignor of the leases, Zone Oil and Gas Company, who is the plaintiff in error herein. Zone Oil's interest in the well arises out of their assignment of the leases in which they reserved oil payments in the amount of $22,000.00 in the event production was found. They claim this reservation is not subject to foreclosure for the reason that under 42 O.S.1961, § 144, as amended in 1963, it was exempt.

The trial court disallowed the exemption, and at the conclusion of Zone Oil's evidence, the court sustained a demurrer on behalf of all the lien claimants. We find the judgment should be affirmed.

Title 42 O.S.1961, § 144, provides that any person who performs labor or furnishes materials to an owner of a leasehold for oil and gas purposes has a lien upon the leasehold including the proceeds from the sale of oil or gas produced inuring to the working interest, *"exempting, however, any valid, bona fide reservation of oil or gas payments or overriding royalty interests executed in good faith and payable out of such working interest * * *"* (Emphasis supplied).

A summary of the facts is as follows: Zone Oil was the original owner of certain oil and gas leases upon which an oil and gas well was located, known as the "Berry No. 1. The leases were filed of record. Sometime prior to September, 1965, Zone Oil negotiated with one of the co-defendants, Lester, to take an assignment of the leases on the Berry No. 1 for the purpose of deepening the well to a lower sand in order to improve the well's production. The agreement contained a reservation in favor of Zone Oil of an oil payment to be taken out of 50% of the production until the sum of $22,000.00 was paid. This

agreement was incorporated in the assignment of leases which was dated September 1, 1965, recorded on September 28, 1965, purporting to be effective July 15, 1965. The work by the plaintiff, Dudley & Heath Drilling Co., of deepening Berry No. 1 was begun on or about the 2nd of September and finished sometime prior to the 28th of September, 1965.

On appeal Zone Oil assigns four errors: (1) Zone Oil's motions to strike, make more definite and certain and demurrer directed to plaintiff's petition should have been sustained; (2) lien claimants are estopped to deny the interest of Zone Oil; (3) trial court erred in placing burden of proof on Zone Oil; and (4) trial court erred in sustaining demurrer to Zone Oil's evidence.

■ It appears that Zone Oil's first and third assignment of errors presupposes the necessity for plaintiff to both properly plead and prove that Zone Oil's reservation of oil payments in the lease were not exempt from foreclosure, under § 144, supra. The assumption is not valid. The party asserting an exemption under the statute is the one who is required to affirmatively plead and prove that it is exempt from foreclosure, Williamson v. Cornett, 101 Okl. 250, 225 P. 358; Tucker v. Housel, 179 Okl. 397, 66 P.2d 28. It was the duty of Zone Oil themselves to plead and prove a valid, bona fide, good faith exemption to the foreclosure action. We find the trial court properly overruled the motions and demurrer of Zone Oil, and correctly placed the burden on Zone Oil to prove its statutory exemption.

■ In its second assignment of error, Zone Oil claims the lienholders are estopped from denying the validity of Zone's interest in the well for the reason that when drilling commenced Zone Oil was the record owner of the lease. They point out the statute (Section 144, supra) requires the lien claimants to contract with the "owner of the leasehold" before their lien can be valid. They argue that when the work on the well was commenced by the lien claimants that Zone Oil was the record owner and not Lester, the person with whom the lienholders had dealt. They claim that no effort was made by the lienholders to determine the true status or interest of Lester, "which they could easily determine by simple and prudent inquiry of Lester, or of Zone Oil, or a search of the records." For these reasons, Zone Oil claims the lienholders are estopped from denying Zone Oil's reservation in the oil payments. We disagree.

The lienholders had no reason to make further inquiry, or search the records, or determine the true status of Lester. The president of Zone Oil testified that approximately two or three weeks prior to the commencement of the well that he had informed plaintiff that the leases had been assigned to Lester. Although Zone Oil claims this witness gave notice of their oil payment reservation in the lease to the plaintiff, the trial court found it was not sufficient. The witness's testimony in pertinent part in this regard is as follows:

On direct examination,

"Q. Did you get (give) any indication of what type of security you might have had?

"A. Yes, I said the only way that I could get my money was that I had mortgaged the lease and equipment, had taken the mortgage and sold it to him and the only way I could get my money was through production. Or Zone could.

\*     \*     \*     \*     \*     \*

On cross examination,

"Q. You told him you had a mortgage on it?

"A. Yes, sir.

"Q. Did you tell him also that you had an assignment of an oil payment?

"A. No sir. Well, I don't know whether I went into it or not. I can't say.

\*     \*     \*     \*     \*     \*

By the Court,

"Q. You say Mr. Witness, that sometime in August you had made a trip up to the Newell No. 1, in Grant County and during that time you had a conversation with Tony Sumpter, and in that conversation you told him of having a mortgage by Lester to you?

"A. No, sir, I don't know that I said I had a mortgage. I said that I represented the company that owned the lease where they were contemplating drilling. Now how much we went into it, I don't remember, but it was discussed, yes, sir, it was discussed, but I don't know in what detail.

\*     \*     \*     \*     \*     \*

Again on redirect.

"Q. Now, tell us again, and make it real clear and specific what was said between you and Tony Sumpter about an oil payment or mortgage on the Berry lease?

"A. Sir, I will tell you the best I can, \* \* \* we discussed Manny Lester, we discussed his position because he is an outsider and a newcomer in the oil business, and we— at least I said he had always paid his bills, that I was a little bit leery of him and that I would tell him the same thing to his face if he was here, because I am under oath, and I told him he was taking over the Berry No. 1 and going to deepen it to the Wilcox, and that the only way I could get my money was the equipment that was on the lease —he didn't want to pay for the equipment that I had just described —the casing, the tubing, the tanks, et cetera, and that the one way I could get it was to mortgage that equipment and take it back through oil runs. That is what was said.

"Q. There was no amount mentioned?

"A. No."

The trial court found this evidence was insufficient to impart notice of Zone Oil's reservation to oil payments. Taken as a whole, we agree the testimony is lacking in clarity and probative value. At best, it refers only to a mortgage in an undetermined amount that was not even executed and filed until after the work on the well was completed. The record shows the mortgage was executed on September 27th and filed for record on September 28th. The well was completed on September 24th.

If any theory of estoppel is appropriate in the present case, it appears to be more applicable against Zone Oil. They placed Lester in possession with all appearances of full ownership. They knew plaintiff and the other lienholders were furnishing labor and material to Lester for the purpose of deepening the Berry well, yet they did not inform or give notice to the lien claimants that they had reserved oil payments in a certain amount. On the contrary, they withheld the assignment of the leases from the record until after drilling had commenced and the well completed.

■ In this same proposition Zone Oil also argues that Lester was a conditional vendee and as such is not an agent so as to give a lien on their interest in the lease for materials furnished and labor performed in developing it, citing State ex rel. Mothersead Continental Supply Company, 137 Okl. 24, 278 P. 269. This contention is inconsistent with their other contention where they claimed to be the "owner" of record. But in any event, the cited case is distinguishable and supports the conclusion reached herein. There the court held that where a leasehold is developed by a conditional vendee for the benefit of the owner under a written contract, and such owner is to receive the entire proceeds of oil runs for the purpose of insuring payment of the purchase price,

and the vendee defaults, the vendee in developing the lease will be held to be acting for the owner so as to subject the property to lien foreclosure. This is analogous to the present case. Here the Berry well was unproductive and uneconomical. The lease assignment and the agreement incorporated therein was an effort to improve the lease and benefit both parties. Under the agreement Lester was to deepen the Berry well and Zone Oil was to receive $22,000.00 in oil payments. Lester in deepening the well, was so doing for the benefit of plaintiff, and therefore the oil runs should not be used to pay the purchase price of the lease assignments ahead of the liens which made possible the oil runs in the first instance.

In the last proposition Zone Oil alleges error of the trial court in sustaining the demurrer to their evidence. They argue the testimony of their president shows a bona fide reservation in good faith acquired through an arms length transaction, and at that point the burden of proof shifted to the lien claimants to prove otherwise. We do not agree.

■■ Inherent in any bona fide reservation of oil payments in a lease is a requirement of actual or constructive notice. In the present case, Zone Oil's failure to record the assignment of the leases or to give actual notice dispels any contention of a bona fide oil payment reservation in good faith.

We find that failure to disclose the existence of a reservation of an oil payment of $22,000.00, or to give proper notice or record such reservation until after all the lienholders had commenced work on the well in question, is not a bona fide reservation of an oil payment in good faith so as to qualify for the status of an exemption as set out in Title 42 O.S.1961, § 144, as amended in 1963.

Judgment affirmed.

All Justices concur.