2002 OK 62

**K & H WELL SERVICE, INC.,**
Plaintiff/Appellant,

v.

**TCINA, INC. and Tcina Holding Co., Ltd., Defendants/Appellees.**

No. 93,451.

Supreme Court of Oklahoma.

July 2, 2002.

---

22. At oral argument, neither party denied that both party-sponsored plans were at least "slightly biased."

Thomas A. Thompson, Shawnee, OK, for appellant.

Larry Jay McMains of Johnston & McMains, Seminole, OK, for appellees.

LAVENDER, J.

¶ 1 Today's cause requires review of the process employed by K & H Well Service, Inc. [lien claimant or K & H] to secure a money judgment against named leasehold owners, to establish the validity of its 42 O.S.1991 § 144[1] oil and gas well liens, and to foreclose the same.

## I

## FACTS AND PROCEDURAL HISTORY

¶ 2 K & H provided materials, supplies and well services in the reworking and drilling of several oil and gas wells in Seminole and Pottawatomie counties during a period beginning in July 1998 and ending in November 1998. K & H alleges that it was hired to perform this work by Tcina, Inc., the wells' operator. Upon not being paid for the rendered services K & H filed (in early December 1998) "oil and gas well lien statements" covering the respective wells in the county clerk's office of either Pottawatomie or Seminole County, depending upon where the specific well which was worked on was located. Each lien statement contained a legal description of the lands against which it was intended to be impressed.

¶ 3 On December 10, 1998 K & H brought suit in Seminole County District Court seeking a money judgment and to foreclose its liens. Tcina, Inc., as operator, and Tcina Holding Co., Ltd. [Tcina or defendants], among others, were named as defendants.

---

1. The pertinent terms of 42 O.S.1991 § 144 are: Any ... corporation ... who shall, under contract, expressed or implied, with the owner of any leasehold for oil and gas purposes, ... or agent of such owner, perform labor or services, ... or furnish material, machinery, and oil well supplies used in the digging, drilling, torpedoing, completing, operating, or repairing of any oil and gas well, ... shall have a lien *upon the whole of such leasehold* ... or lease for oil and gas purposes, the buildings and appurtenances, the proceeds from the sale of oil or gas produced therefrom inuring to the working interest, ... and upon the material and supplies so furnished, ... and upon all the other oil or gas well fixtures and appliances used in the operating for oil and gas purposes upon the leasehold for which said material and supplies were furnished or labor or services performed. .... [C]ompliance with the provisions of this shall constitute constructive notice of the lien claimant's lien to all purchasers and encumbrancers of said property or any part thereof, subsequent to the date of the furnishing of the first item of material or the date of the performance of the first labor or services. [Emphasis added.]

After the suit's initiation but before trial commenced, the liens on all wells but the Salma Wells Nos. 3 and 4[2] were discharged by payment of the claimed amounts.

¶ 4 The appealed-from judgment addresses the legal efficacy and effect to be given to K & H's lien statement filed in Book 7453, Page 62 in the Seminole County Clerk's office. The challenged lien purports to encumber the following described land:

> The Fleet Osborn Gilcrease Unit
>
> W/2 NW/4 and N/2 SW/4 and S/2 Lot 2, Lot 4, Lot 5, Lot 6, all in Sec. 25–T5N–R7E, and E/2 NE/4 and NW/4 NE/4 and East 20 acres of Lot 1, Lot 4, Lot 5, all in Section 25–T5N–R7E, including all riparian rights all in Seminole County, State of Oklahoma.

The Salma Well No. 3—per a filed Oklahoma Corporation Commission report—was recompleted in the SE/4 NW/4 NW/4 of section 25–T5N–R7E to the Booch formation; and the Salma Well No. 4—per a filed Oklahoma Corporation Commission report—was recompleted in the W/2 NE/4 SW/4 NW/4 of section 25–T5N–R7E to the Wapanucka formation. The defendants did not contest that K & H performed the work which is the subject of the above lien or the amount charged.

¶ 5 At trial Tcina, Inc. alleged that although it was the contract operator of the Salma wells, it did not possess an interest in the leases covering the lands subject to the lien. Berry Doyal (the principal owner of both Tcina, Inc. and Tcina Holding Co., Ltd.) represented that when negotiating with K & H for the well work to be performed he disclosed (1) that Tcina, Inc. was an agent for the owners of the leasehold estate upon which the well work was to be done and (2) the leasehold owners were going to pay for the requested rework. Tcina, Inc. asserts that its status as a non-leasehold owner and an agent for disclosed principals precludes its liability for the work which K & H performed on the Salma wells.

¶ 6 Tcina Holding Co., Ltd., claims that it owns no interest in the leasehold estate against which K & H's liens were impressed. Nonetheless, there is recorded in the Seminole County Clerk's office an assignment, dated December 1, 1997, of an undivided 5% interest in leases (covering the same mineral estates as the leasehold estate against which K & H's lien was impressed) from Grant Oil and Gas Corporation to Tcina Holding Co., Ltd. At trial Tcina Holding Co., Ltd., asserted that the acquired interest was only a carried working interest.[3] However, the allocation of expenses traditionally associated with a carried interest is nowhere reflected in the assignment's terms. At trial Tcina Holding Co., Ltd., introduced an *unrecorded* "Disclaimer and Assignment Without Warranty," dated May 4, 1999, of its interests in the Salma Wells nos. 3 and 4 to *the record owners.* Also, Tcina Holding Co., Ltd.'s leasehold interest in formations—other than those formations in which the Salma wells were completed—were apparently reserved by Tcina Holding Co., Ltd. as they were excluded from the disclaimer and assignment's scope.

¶ 7 After trial judgment was entered in favor of the Tcina entities on K & H's (a) claim for a money judgment and (b) attempt to foreclose its lien. The trial court also awarded an attorney fee to Tcina, Inc. and Tcina Holding Co., Ltd. K & H appealed and the Court of Civil Appeals [COCA] reversed the trial court's judgment and remanded the cause. The COCA found that Tcina, Inc. was merely a contract operator of the wells sub-

---

**2.** At various places in the record and the parties' appellate paperwork the Salma wells are referred to as either the "Salma" or "Selma" wells. For purposes of this opinion these wells will be referred to as the "Salma" wells because that is the name assigned to them in the paperwork filed with the Oklahoma Corporation Commission.

**3.** See *Mayfield v. H.B. Oil & Gas*, 1987 OK 106, 745 P.2d 732, 733 fn. 1 [citing 8 *Williams and Meyers, Oil and Gas, Law Manual of Terms*, 102

(1984)], where "carried interest" is defined as follows:

> A carried interest is a fractional interest in an oil and gas property, usually a lease, the holder of which has no personal obligation for operating costs, which are to be paid by the owner or owners of the remaining fraction, who reimburse themselves out of production, if any. The person advancing the cost is the carrying party and the other is the carried party.

ject to the lien in issue, had disclosed the principals for which it was the agent to K & H, and owned no leasehold interests in the lands subject to K & H's lien. It concluded that Tcina, Inc. was correctly found to have no liability. Nonetheless, the COCA held that Tcina Holding Co., Ltd. did possess a leasehold interest in the wells subject to the lien and remanded the case with instructions to allow the foreclosure to proceed. It also determined that K & H was the prevailing party in the action and vacated the trial court's attorney-fee award.

¶ 8 The Tcina entities sought certiorari which was granted.

## II

### THE STANDARD OF REVIEW

¶ 9 The judgment presented for review is a compilation of both findings of facts and conclusions of law.[4] When, as here, the case is tried to the court, its determination of facts are accorded the same force as those made by a well-instructed jury.[5] If any competent evidence supports the trial court's findings of fact, the same will be affirmed.[6] Whether a lien is perfected under applicable statutes—i.e., whether the facts (once established) demonstrate substantial compliance with applicable statutory requirements—is largely a question of law for the trial court to resolve.[7] Issues of law are reviewed *de novo* since an appellate court has plenary, independent and non-deferential authority to re-examine a trial court's legal rulings. Lastly, the trial court's decision not to allow amendment of the plaintiff's lien statement will be reviewed under an abuse-of-discretion standard.[8] Unless the record clearly discloses that the trial court abused its discretion, its decision will not be disturbed.

## III

### SINCE K & H'S PERFORMANCE OF THE CONTRACT AND THE AMOUNT OWED IS UNDISPUTED, THE TRIAL COURT SHOULD HAVE AWARDED A MONEY JUDGMENT AGAINST THE NAMED LEASE-HOLD OWNER

¶ 10 The following facts were not controverted at trial: (a) that K & H provided labor and services for the Salma Wells nos. 3 and 4 pursuant to an oral contract with Tcina, Inc. as agent for the leasehold owners and (b) the correctness of the amount charged for the labor and services provided. Rather, the defendants contested who was liable for the same. Tcina, Inc. and Tcina Holding Co., Ltd.'s defenses to liability were primarily alike—i.e., that neither owned a leasehold interest in the lands subject to the lien in issue.[9]

¶ 11 Subsumed in the trial court's judgment denying liability on Tcina, Inc.'s part is necessarily a finding that Tcina, Inc. owned no leasehold interest in the lands covered by K & H's lien for the work done on the Salma wells. A review of the record and appellate paperwork discloses no basis for challenging the trial court's finding on this factual issue. There is credible evidence in the record which supports Tcina, Inc.'s claims that (1) it was the contract operator of the wells in question and (2) it disclosed those for whom it was agent [10] when it nego-

---

4. *Barnes v. Okla. Farm Bureau Mut. Ins. Co.,* 2000 OK 55, 11 P.3d 162, 166.

5. *Bradley v. Clark,* 1990 OK 73, 804 P.2d 425, 427.

6. *Sparks v. Midland Supply Co., Inc.,* 1959 OK 73, 339 P.2d 1056, 1059.

7. *See Dismuke v. Cseh,* 1992 OK 50, 830 P.2d 188, 190.

8. Whether K & H should have been allowed to amend its filed lien statement is an issue which lies within the trial court's *discretion. See Hemisphere Oil & Gas Co. v. Oil Well Supply Co. et al,* 104 Okl. 83, 230 P. 245, 247 (Okla.1924); *see also Alberti v. Moore,* 20 Okl. 78, 93 P. 543 syl. (Okla.1908).

9. Neither Tcina entity denies that it owned leasehold interests in the lands which were impressed with the liens *that were discharged.*

10. Oklahoma's extant jurisprudence recognizes the rule that an agent for a *disclosed* principal has no *personal* liability for the latter's ex contractu breach. *See Bane v. Anderson, Bryant & Co.,* 1989 OK 140, 786 P.2d 1230, 1234; *Osenbaugh v. Virgin & Morse Lumber Co.,* 173 Okl. 110, 46 P.2d 952, 954 (Okla.1935).

tiated the work (recompletion of the Salma wells) the subject of K & H's lien. Also, no evidence was adduced by K & H which would establish that Tcina, Inc. possessed record title to a leasehold interest in the lands covered by the Salma-wells lien. Hence, we decline to reverse the trial court's judgment denying Tcina, Inc.'s liability for the claimed indebtedness.

¶ 12 The same result does not follow as to Tcina Holding Co., Ltd. The record discloses an absolute assignment of a 5% interest in the oil and gas leases covering the mineral estate on which the Salma wells nos. 3 and 4 were drilled, *recorded in the Seminole County Clerk's office,* from Grant Oil and Gas Corporation to Tcina Holding Co., Ltd. The recorded assignment bore *no terms* relating to payment of expenses attributable to the interest assigned. Tcina Holding Co., Ltd.'s attempt to restrict the *recorded* assignment's effect by its introduction at trial of an *unrecorded* disclaimer and assignment to the "record owners" of the leases is not persuasive for several reasons.

¶ 13 First, when Tcina Holding Co., Ltd. executed the (unrecorded) disclaimer and assignment quitclaiming its interest in the Salma wells nos. 3 and 4 to the "record owners", it was itself one of the record owners of the leasehold estate in question. Hence, the legal effect of the assignment language employed by Tcina, Inc. would be a reconveyance to itself of some quantum of interest in the leasehold estate covering the Salma wells nos. 3 and 4. Even if its attempted disclaimer and assignment were effective, it would have remained a leasehold owner.

¶ 14 Second, Tcina Holding Co., Ltd was assigned *of record* a five percent (5%) interest in various leases covering the lands sub-

ject to K & H's lien. A recorded conveyance *imparts constructive notice* on and after the date it is recorded to the assignee's [here Tcina Holding Co., Ltd.] creditors [here K & H] that it owns an interest in the oil and gas leases the subject of the assignment.[11] The assignment to Tcina Holding Co., Ltd. was filed December 31, 1997, over six months before K & H worked on the leases in question. K & H, as a creditor of Tcina Holding Co., Ltd., is entitled to rely upon the title to the leases in question as reflected in the records maintained in the Seminole County Clerk's office when it (a) supplied the labor and materials the subject of its lien and (b) prepared its oil and gas lien statement.[12] The oral and written variance—sought by Tcina Holding Co., Ltd.—of the recorded assignment is ineffective and as a matter of law affords no basis for the defeat of K & H's lien.[13]

¶ 15 Since (1) Tcina, Inc.—as the agent for the owners [including Tcina Holding Co., Ltd.] of the leasehold-estate upon which the Salma wells were drilled—negotiated with K & H to furnish the labor and supplies which are the subject of K & H's lien; (2) Tcina Holding Co., Ltd. is possessed of record with an interest in the subject leasehold; and (3) there is no controversy that K & H performed the contract by supplying the requested labor and materials and also that its charges were accurate, K & H is entitled to a money judgment against Tcina Holding Co., Ltd. The trial court erred in not giving judgment to K & H for the same.

¶ 16 Because the record does not identify the *record owners* [other than Tcina Holding Co., Ltd.] of the leases covering the drilling and spacing unit for the Salma wells,[14] we offer no opinion about the legal relation-

---

**11.** 16 O.S.2001 § 16, whose pertinent terms provide:

Every conveyance of real property acknowledged or approved, certified and recorded as prescribed by law from the time it is filed with the register of deeds for record is constructive notice of the contents thereof to subsequent purchasers, mortgagees, encumbrancers or *creditors.* [Emphasis added.]

*See also Straub v. Swaim,* 1956 OK 97, 296 P.2d 147, 148.

**12.** For comparable analysis, *see Zone Oil and Gas Co. v. Dudley and Heath Drilling Co.,* 1970 OK 155, 474 P.2d 395, 399.

**13.** For comparable analysis, *see Pierson v. McCrory et al.,* 93 Okl. 117, 219 P. 641, 642 (Okla.1923).

**14.** There is no adduced evidence in the record which establishes the owners of the mineral estate and the respective lessees for the Booch and Wapanucka formations underlying the Salma wells nos. 3 and 4.

ship—i.e., whether a mining partnership existed [15]—between Tcina Holding Co., Ltd. and the unidentified leasehold estate owners.[16] Upon remand *unless a mining partnership is found to exist* between Tcina Holding Co., Ltd. and the other record leasehold owners, Tcina Holding Co., Ltd. can only be found liable for five percent (5%) of the contracted-for charges.[17]

## IV

## SINCE K & H PERFECTED ITS LIEN OF RECORD, THE TRIAL COURT ERRED WHEN IT DID NOT ORDER ITS FORECLOSURE AGAINST TCINA HOLDING CO., LTD.

■ ¶ 17 Of initial import in deciding K & H's entitlement to foreclosure of its oil and gas well lien is an assessment of the legal quality and scope of the § 144 lien (filed against the Salma wells nos. 3 and 4) recorded in the Seminole County Clerk's office. One of the standards for assessing the efficacy of K & H's lien is whether it was *perfected?* The perfection requirement has as its central purpose notification—i.e., advisement of record to potential buyers and third parties, as well as those against whose interests the lien is sought to be impressed, of the nature and amount of the vendor's claim.

¶ 18 A 42 O.S.2001 § 144 [18] oil and gas lien statement must be filed in accordance with all, but the temporal, provisions of 42 O.S. 2001 § 142.[19] The pertinent § 142 requirements are that (1) the lien statement be filed in the county clerk's office for the county in which the land sought to impressed with the lien is located, (2) that the lien statement set forth the amount claimed and, as practicable, the items for which the charges were incurred, and (3) it identify the owner(s), contractor, and claimant's names and the legal description of the property subject to the lien. When filed in conformity with the statutory requirements, the lien relates back to the date work was first performed on the job site.[20] The provisions of 42 O.S.2001 § 172 allow for the lien statement's amendment as to the above elements—except for the amount claimed—upon showing that the same would be "in furtherance of justice."

■ ¶ 19 In applying the above statutory standards the Court has held that a lien is perfected when (1) the labor and supplies are furnished pursuant to either an express or implied contract;[21] (2) the content of the oil and gas lien statement *substantially conforms* to applicable statutory requirements[22] and is sued upon within the time prescribed by statute;[23] and (3) the lien is filed within

---

**15.** *See Sparks Bros. Drilling Co. v. Texas Moran Exploration Co.,* 1991 OK 129, 829 P.2d 951, 953., where the test for assessing whether a mining partnership exists is succinctly stated. *See also Schulte v. Apache Corp. et al,* 1995 OK 148, 949 P.2d 291, 297.

**16.** The Court notes that the trial court did not reach the issue whether a mining partnership existed between Tcina Holding Co., Ltd and the other working interest owners. The judgment denying Tcina Holding Co., Ltd.'s liability is apparently based upon the trial court's erroneous conclusion that Tcina Holding Co., Ltd. owned no interest in the leases covering the mineral estate upon which the Salma wells were drilled. Such a conclusion obviated the trial court's need to reach the mining-partnership issue.

**17.** *See Sparks, supra* note 15 at 952. Appellee misreads *Sparks* when it asserts that it holds when no mining partnership is found to exist, each participant's liability for a well's drilling costs is *in rem only.* *Sparks* holds that each participant's liability—when no mining partnership exists—is limited to that quantum of interest

[here 5%] which each participant possesses in the well, i.e., each participant is *severally* liable for expenses in direct proportion to the quantum of leasehold-interest owned. The obligation is not just *in rem* but rather is *both in rem* and *in personam.*

**18.** For the pertinent terms of 42 O.S.2001 § 144, *see supra* note 1.

**19.** *See* the provisions of 42 O.S.2001 § 146 which provide that § 144 liens "shall be filed in the same manner as is provided for in Sections 141 through 143.4" of Title 42.

**20.** 42 O.S.2001 § 144.

**21.** *See Amarex v. El Paso Nat. Gas Co.,* 1987 OK 48, 772 P.2d 905, 909. *See also*

**22.** *See* paragraph 18 above for the pertinent statutory requirements.

**23.** *Horton v. Wachtman Drilling Co.,* 1963 OK 219, 385 P.2d 802, syl. 3. The terms of 42 O.S.

the time allowed by law in the county clerk's office for the county where the land sought to impressed with the lien is located.[24]

¶ 20 The Tcina entities assert that the contested lien is fatally flawed and hence its foreclosure was properly denied by the trial court. Tcina does not contest the existence of a contract for the supply of materials and labor by K & H nor does it deny the lien's timely filing and prosecution of the foreclosure action. In fact the record offers proof of the contract's existence, the lien's timely filing and foreclosure, and substantial compliance with the § 142 requirements. The flaw suggested by the Tcina entities is that the legal description identifying the lands subject to the lien is incorrect because of its reference to the "Fleet Osborn Gilcrease Unit." The argument is made that the target zones for the recompletion-work were formations other than the one from which the Fleet Osborn Gilcrease Unit produces; hence, the legal description employed in K & H's lien is incorrect and constitutes a barrier to the lien's enforcement. The Tcina entities' argument is not persuasive.

¶ 21 Oklahoma's extant jurisprudence has on several occasions since statehood addressed deficient legal descriptions in materialmen and mechanics' liens and how to resolve the same. It is not required that the legal description used be precise in every detail. Substantial compliance with the lien statute will be found when the description used would enable a person familiar with the property to identify the premises intended to be impressed with lien or would put the party named on inquiry notice—i.e., give the named party enough notice that he should make inquiry about what land the lien is intended to cover.[25]

¶ 22 In today's case the record demonstrates that K & H's § 144 oil and gas lien statement substantially recites the data required by § 142; was timely filed in the office of the Seminole County Clerk's office—the county in which the Salma wells nos. 3 and 4 are situate; and was timely pursued. No issue is taken with the legal description employed in the recorded lien statement other than the recitation of the "Fleet Osborn Gilcrease Unit" above the legal description. The description used is sufficient to put Tcina Holding Co., Ltd. on inquiry notice whether its leasehold interest lay within the lien's scope. Under the facts here present it is unimaginable that Tcina Holding Co., Ltd.—an entity owned by the same person who as the leasehold-owners' agent negotiated for the labor and materials supplied by K & H—would not know what lands were impressed with K & H's lien or at a minimum with limited inquiry could discover the same. Since Tcina Holding Co., Ltd owns a leasehold interest in lands lying within the scope of K & H's liens,[26] K & H's lien put it on inquiry notice to ascertain whether the recorded lien statement encumbered its interest.

¶ 23 We hold that under the adduced evidence and as a matter of law K & H's lien is in substantial compliance with statutory requirements and hence perfected. As such it is entitled to foreclosure against the leasehold interest owned by Tcina Holding Co., Ltd.

## V

### BECAUSE K & H SECURED A MAJORITY OF THE RELIEF WHICH IT SOUGHT IN THE CASE BEFORE THE TRIAL COURT, IT IS THE PREVAILING PARTY IN THE ACTION AND ENTITLED TO AN ATTORNEY–FEE AWARD UNDER THE PROVISIONS OF 42 O.S.2001 § 176.[27]

¶ 24 K & H originally brought an action on December 10, 1998 seeking a mon-

2001 § 172 require that the lien claimant bring an action to foreclose its lien within one year from the lien's filing date with the county clerk's office.

24. See Fourth Nat'l Bank of Tulsa v. Appleby, 1993 OK 153, 864 P.2d 827, 834.

25. Corbitt v. Logan, 1933 OK 140, 20 P.2d 894, syl.1 where the Court held:
"Where a mechanic's lien is properly and timely filed, containing an incorrect description of the property to be affected thereby, but containing all other requirements, but such description is sufficient, when inquiry is pursued, to enable a person to identify the premises intended to be described with reasonable certainty, such lien statement is sufficient to support an action in foreclosure." Id.
See also Blanshard v. Schwartz, 1898 OK 32, 54 P. 303, syl.1, 305.

26. See section III above where Tcina Holding Co., Ltd.'s leasehold-ownership interest is discussed.

27. The pertinent provisions of 42 O.S.2001 § 176 are:

ey judgment and foreclosure of *four* oil and gas liens against the named defendants. Between the latter part of December 1998 and January 31, 1999 Tcina, Inc. paid off *three* of the liens including the attorney-fee allowed under the applicable lien statute and the same were released of record. Trial on the remaining unpaid lien was had on June 10, 1999. Both Tcina, Inc. and Tcina Holding Co., Ltd. would have the Court uphold their attorney-fee awards below because they prevailed at trial on the efficacy of *one* of the four liens which were *originally* at issue.

¶ 25 Extant jurisprudence clearly sets forth the correct standard for assessing who is a prevailing party for purposes of an attorney-fee award under the provisions of 42 O.S.1991 § 176. In *Swan–Sigler, Inc. v. Black,* 1966 OK 90, 414 P.2d 300, syl. 2 the Court held:

> [N]o attorney's fee may be allowed the attorney for the defendant unless the final *judgment* be against the lien claim.

Here, K & H prevailed against Tcina Holding Co., Ltd. on its lien claim. Hence, the attorney-fee award for Tcina Holding Co., Ltd. is reversed. Nonetheless, Tcina, Inc. defeated K & H's lien on the Salma wells and the trial court's attorney-fee award (as to the litigated lien) in favor of Tcina, Inc. is affirmed.

## VI

### SUMMARY

¶ 26 Since statehood Oklahoma has sought through legislative enactments to protect those who provide labor and materials to others which result in the enhancement of the latter's property. It is the application of these statutory procedures to the oil and gas lien statement which K & H filed that is called into issue by today's cause. When an purveyor of labor and oilfield equipment has supplied the same to another and has not

been paid, Oklahoma's statutes provide an avenue of protection for the former if it substantially complies with the applicable statutory scheme—Title 42, Chs. 3 and 5, Oklahoma Statutes.

¶ 27 Our review of the record in the instant case demonstrates that K & H's effort to perfect and enforce its liens did substantially comply with the applicable statutory provisions and as a matter of law K & H perfected a § 144 lien against Tcina Holding Co., Ltd.'s leasehold interests, which is enforceable by foreclosure. Since Tcina, Inc. is but an agent of the leasehold owners, it has no liability under the contract which it negotiated with K & H on behalf of the owners of the Salma Wells nos. 3 and 4. The trial court, while correct in giving judgment to Tcina, Inc., erred in not allowing foreclosure of K & H's § 144 lien to proceed against Tcina Holding Co., Ltd.

¶ 28 Lastly, we hold that the trial court erred when it determined who prevailed below and, hence, was entitled to an attorney-fee award. K & H succeeded on its lien claim against Tcina Holding Co., Ltd and should have been awarded an attorney fee under the terms of 42 O.S.2001 § 176. Since Tcina, Inc. defeated the plaintiff's lien claim on the Salma wells, the attorney-fee award in favor of Tcina, Inc. was not entered in error and is affirmed.

¶ 29 Upon certiorari previously granted,

**THE COURT OF CIVIL APPEALS' OPINION IS VACATED; THE TRIAL COURT'S JUDGMENT IS REVERSED IN PART AND AFFIRMED IN PART; AND THE CAUSE IS REMANDED FOR FURTHER PROCEEDINGS NOT INCONSISTENT WITH TODAY'S PRONOUNCEMENT.**

¶ 30 HARGRAVE, C.J., WATT, V.C.J., HODGES, SUMMERS, BOUDREAU and WINCHESTER, JJ., concur.

---

In an action brought to enforce any lien the party for whom judgment is rendered shall be entitled to recover a reasonable attorney's fee, to be fixed by the court, which shall be taxed as costs in the action.

¶ 31 KAUGER, J., concurs in result.

¶ 32 OPALA, J., concurs in part; dissents in part.