241 P.3d 1155 (2010)
2010 OK CIV APP 112
BAER, TIMBERLAKE, COULSON & CATES, P.C., Plaintiff/Appellee,
v.
Rahmana WARREN, Defendant/Appellant,
Herbert E. Warren, John Doe, Jane Doe, Gregory Jackson, Spouse, If Any, of Gregory Jackson, Rodney Steward, Spouse, If Any, of Rodney Steward, Marisha A. Steward, Spouse, If Any, of Marisha A. Steward, Naeemah B. Steward, and Spouse, If Any, of Naeemah B. Steward, Defendants.
No. 106,212. Released for Publication by Order of the Court of Civil Appeals of Oklahoma, Division No. 1.
Court of Civil Appeals of Oklahoma, Division No. 1.
August 13, 2010.
*1156 R. Greg Andrews, Andrews & Eckstein, Norman, OK, for Plaintiff/Appellee.
Cynthia Rowe D'Antonio, The Law Offices of Smith & D'Antonio, Oklahoma City, OK, for Defendant/Appellant.
WM. C. HETHERINGTON, JR., Judge.
¶ 1 Rahmana Warren appeals a judgment in favor of attorneys Baer, Timberlake, Coulson & Cates, P.C., arguing Baer was not a holder of note and should not be allowed to recover when a mistake in a payoff amount used in closing documents was caused by its own calculation error. The judgment of the trial court is supported by competent evidence and is not affected by an abuse of discretion or error of law. Consequently, the trial court's judgment is AFFIRMED.

STANDARD OF REVIEW
¶ 2 "Issues of law are reviewable by a de novo standard. An appellate court claims for itself plenary, independent and non-deferential authority to re-examine a trial court's legal rulings." Brown v. Nicholson, 1997 OK 32, n. 1, 935 P.2d 319, 321. "[A]n adjudication *1157 of a fact by a lower tribunal is reviewed by different standards according to the type of controversy and type of adjudication made." Christian v. Gray, 2003 OK 10, ¶ 41, 65 P.3d 591, 608. A clear abuse of discretion standard includes appellate review of both fact and law issues. Id., ¶ 43, p. 608. An abuse of discretion occurs when a court bases its decision on an erroneous conclusion of law or where there is no rational basis in evidence for the ruling. Fent v. Oklahoma Natural Gas Co., 2001 OK 35, ¶ 12, 27 P.3d 477, 481. "When, as here, the case is tried to the court, its determination of facts are accorded the same force as those made by a well-instructed jury. If any competent evidence supports the trial court's findings of fact, the same will be affirmed." K & H Well Service, Inc. v. Tcina, Inc., 2002 OK 62, ¶ 9, 51 P.3d 1219, 1223 (footnote omitted). Unless the record clearly shows an abuse of discretion by the trial court, its decision will not be disturbed. Id. ¶ 9, p. 1223.

FACTS
¶ 3 Warren executed a promissory note for the principle amount of $180,500 and a mortgage on July 25, 2005.[1] As part of the same transaction, she and Herbert Warren, her husband, signed a mortgage in favor of Argent Mortgage Company, LLC.
¶ 4 U.S. Bank National Association, (U.S. Bank) filed suit on July 25, 2006, claiming Warren's payments had fallen into arrears and her note was in default. U.S. Bank sought foreclosure of the mortgage, a judgment in rem, and an in personam judgment against Warren.[2] Baer, a law firm with a real estate practice which represents lenders in the mortgage industry, initially acted as counsel for U.S. Bank.[3]
¶ 5 Meanwhile, Warren found a buyer for the property. Between August 30, 2006 and October 31, 2006, she obtained three loan pay-off quotes from Baer, the last of which contained a column of numbers which were incorrectly added. The payoff quote advised, "Please note that the costs listed as `estimated costs' are an estimate only of the costs which will accrue up and until the expiration of this quote," the "payoff figure is valid only until November 2, 2006," and that "[a]ll figures are subject to our client's verification after receipt."
¶ 6 As a result of the incorrect addition and apparently, second error, when the property was sold at a November 1, 2006 closing, an incorrect figure was used for the loan pay-off. The sum used in closing documents and sent as the payment from closing to Baer was $191,697.43, i.e., $6.00 more than the pay-off quote total. The source for the $6.00 discrepancy is not clear from the record. A November 1, 2006 check for the new incorrect amount was sent to Baer by the title company handling the closing. Baer sent one of its own checks the next day, November 2, 2006, for this new incorrect amount ($191,697.43) to its client, Wells Fargo Home Mortgage d/b/a America's Servicing Company, (ASC) the company servicing U.S. Bank's loan.
*1158 ¶ 7 Warren moved to dismiss U.S. Bank's lawsuit on November 29, 2006, arguing acceptance of the $191,691.43[4] was an accord and satisfaction of her debt.[5] U.S. Bank responded on December 21, 2006, arguing, in part, there was not a cancellation or discharge of the amount due under the note or an accord and satisfaction because there had been a mistake or unintentional cancellation. It argued its agent, Baer, did not intend to accept any amount less than full payment on the note. The trial court later denied Warren's motion to dismiss.
¶ 8 In the meantime, Baer's November 2, 2006 check was returned to it as insufficient to pay the loan amount. Baer issued a new check, dated December 14, 2006, for $201,691.43, the correct amount for payoff as of the November closing. In a December 27, 2006 facsimile, ASC advised Baer the pay-off was $9,190.43 short as of December 28, 2006, because $2,911.00 had been paid on November 14, 2006 for insurance, $2,402.20 had been paid on December 14, 2006 for taxes, and ASC wanted to recoup attorney fees and costs billed by Baer. The notice also advised the shortage was continuing to accrue at $42.10 per day. Baer issued a check dated December 27, 2006 for the $9,190.43 shortage.
¶ 9 In a letter dated December 29, 2006, ASC congratulated Warren and informed her it "had processed funds to pay your loan in full." Warren received a January 23, 2007 Release of Mortgage from "Wells Fargo Bank, N.A. as successor by merger to Wells Fargo Home Mortgage, Inc. as Attorney in Fact for U.S. Bank National Association, as Trustee," which was recorded on January 30, 2007, at the request of ASC.
¶ 10 On March 30, 2007, Warren and her husband filed a first amended answer to the first amended petition in U.S. Bank's lawsuit, raising affirmative defenses including that U.S. Bank did not demonstrate it was a real party in interest; an accord and satisfaction had occurred when $191,697.43 was delivered on November 1, 2006; it had accepted the payment and was estopped from claiming an additional amount; an additional payment would be illegal as unconscionable and unreasonable; payment had been made based upon U.S. Bank's demand; the debt was released as evidenced by the letter advising of the mortgage release; and the right to additional monies was waived by the acceptance of the monies tendered.
¶ 11 On August 10, 2007, U.S. Bank moved to substitute Baer[6] as plaintiff, advised Baer "has been subrogated to the rights of U.S. Bank under the promissory note," and asked "that the caption of this matter be modified" to reflect Baer as the sole plaintiff. The trial court granted the motion to substitute on August 22, 2007.
¶ 12 On November 26, 2007, Baer filed a motion for summary judgment, claiming there was no substantial controversy as to any material facts, Warren owed a balance on her note, and it was entitled to judgment *1159 as a matter of law.[7] Warren responded, and then amended her response to include her own motion for summary judgment, claiming, among other things, that a novation occurred and she was not liable for any balance on the note due to Baer's mistakes and lack of care.[8]
¶ 13 The case proceeded to a non-jury trial. Baer contended its cause of action was for breach of contract due to a failure by Warren to pay the full amount due on the note. It argued it was a holder of the note, any cancellation or discharge was "inoperative due to being an unintentional mistake made in the calculation of the payoff," and such an unintentional act did not amount to an accord and satisfaction.
¶ 14 Baer's president, Donald James Timberlake, Jr., testified his firm never intended to accept payment of anything less than the full amount due on the note, Baer had paid the shortage to facilitate a release of the mortgage for the benefit of the new purchaser of the property, and Warren had not paid in full her note or provided any consideration to Baer for accepting less than the amount actually owed under the note. He also testified the note, which had been indorsed in blank, was a bearer instrument and did not pass via assignment. He testified the original suit was for a money judgment based upon the note default which was a breach of contract. Once a money judgment was obtained, the initial plan had been to proceed to a foreclosure of the property securing the note.
¶ 15 Warren testified to receiving the payoff quote and relying on it to close the sale to a third-party. She did not dispute an error in calculation had occurred. She received notice of underpayment from Baer approximately three weeks after the closing. Warren testified she has not received back the original note, but upon receiving the December 29, 2006 letter from ASC and the release of mortgage, she believed the note was paid off and both it and the mortgage had been released and cancelled.
¶ 16 After Baer rested its case, Warren moved for a directed verdict, arguing Baer had not proven a cause for breach of contract, nothing in the petition in the case states a claim for $10,000,[9] there was no evidence of an assignment to support subrogation, and "there was nothing to assign" because "[t]he loan had been paid" at the time the note was held by U.S. Bank. Warren also claimed Baer could not meet the requirements to be a holder in due course due to its knowledge about the loan's default status when suit was filed and its own involvement in the creation of the $10,000 payment issue. The trial court denied the motion for directed verdict, the parties were granted leave to file trial briefs, and the matter was taken under advisement.
¶ 17 In its Journal Entry of Judgment, the trial court found Baer made an unintentional $10,000 mistake when adding up items in a payoff quote, it did not intend to reduce the amount owed under the note, Baer was a holder of the note, Warren knew or should have known the third payoff total quoted to her was due to a mistake, she owed $9,994 plus accrued interest to the date of judgment, and she had not proven her affirmative defenses. The trial court agreed the additional charges accruing after the date of closing for items such as taxes and insurance were caused by "mis-communication and negligence" and found Warren was not responsible for these charges. The trial court entered judgment for a total of $11,382.55 for *1160 principle and interest with post-judgment interest,[10] in favor of Baer.

ANALYSIS
¶ 18 Warren appeals, arguing Baer did not qualify as a holder in due course, the trial court erred in finding Baer made a simple error rather than inexcusable neglect for which it should be accountable, and the trial court erred in finding she had breached a contract with Baer. In its answer brief, Baer agrees it is not a holder in due course[11] and claims only to be a holder of an unsecured note. This was the status as found by the trial court.
¶ 19 Warren's reply brief argues Baer should not be deemed a holder based upon a special indorsement on the note limiting payment to Argent Mortgage Company, LLC. The note contains the special indorsement text "pay to the order of," which indicates it may only be negotiated by the one named, here Argent. 12A O.S.2001 § 3-205(a). However the note also bears a subsequent indorsement in blank, which rendered it payable to bearer and negotiable by transfer of possession alone, 12A O.S.2001 § 3-205(b), here by U.S. Bank and then Baer. Indorsements pose no barrier to Baer's holder status.
¶ 20 Warren claims Baer's errors were "inexcusable negligence," not simple mistake. She argues Baer may not be a holder of the note or recover based upon its own errors, as reflected by not only the addition miscalculation in the payoff quote but also by differences between the quote, the sum used at closing and in Baer's original check to ASC, and the need for payment of additional sums due to the shortage in the first check tendered by Baer. Warren also contends Baer "should not be allowed to collect its alleged deficiency on the sale of real property by resorting to the U.C.C." and the note should be deemed satisfied as of the property sale because it failed to timely follow statutory requirements to collect a deficiency.
¶ 21 We address this last contention first. This case began as an action on a note and to foreclose a mortgage due to Warren's failure to timely pay on her note and in accordance with her mortgage. Warren argues that once litigation began, Baer was required to follow foreclosure statutory procedures and because it did not timely assert a deficiency following the sale of the property securing her mortgage according to statutory procedure, it is barred from recovery. The words or phrases used by the Legislature must be understood in the context of all of a statute, not in an abstract sense, and understood so as to best harmonize with other parts. Matter of Estate of Little Bear, 1995 OK 134, 909 P.2d 42.
¶ 22 In citing to Bank of Oklahoma, N.A. v. Welco, Inc., 1995 OK CIV APP 43, 898 P.2d 172, and concentrating her analysis on use of the word "sale" in that case, Warren fails to give due consideration to the context for that same word in § 686, which refers to an "order of sale" to satisfy a mortgage upon foreclosure. The "sale" here was a private sale and was not made pursuant to such an order. There was no foreclosure in this proceeding. Consequently, 12 O.S.2001 § 686,[12] which creates a time limit for claims for recovery of a post-judgment deficiency after foreclosure, has no application here.
¶ 23 There is no dispute as to the mistaken figure at closing. Warren did not timely deliver sufficient funds to pay off her *1161 note. The payoff quote warned "[a]ll figures are subject to our client's verification after receipt," and that their client "reserves the right to adjust the quotation set forth herein." In bolded type, the payoff quote also warns "[t]hese costs are estimated only as the actual amount cannot be determined as of the date of this letter ... In the event that the actual costs exceed the amount of the estimate, you will be responsible [sic] the excess amount."
¶ 24 The trial court found Warren should have known the total in the third and last payoff quote was incorrect because she had not made any additional payments since her default and since receiving the first and second quotes, which were both higher. We agree. Clearly, the mortgage release and the letter ASC sent to Warren added to the confusion about her debt on the note. However, no fees, costs or other items owed were omitted in the third quote. There is no allegation or proof of any intentional concealment of the amounts owed. Nothing prevented anyone from adding the payoff items up correctly. The evidence only shows the figures were just totaled up incorrectly by Baer.
¶ 25 Cases addressing unintentional or mistaken cancellation of a negotiable instrument are not on point, but the theories applied provide some guidance in addressing the issues presented. In Hanna v. Parrish, 1957 OK 277, 317 P.2d 745, a note was marked "paid" and returned to the borrower by a lender, and a mortgage was cancelled. There, the Court found whether the party claiming the mistake had met their burden of so proving, thereby rebutting a presumption of payment created by the maker's possession of the note, was a question for the jury.
¶ 26 The amount Warren paid at closing was $9,994 less than what was sufficient to pay off her note. By December of 2006, Baer had paid ASC this shortage and the charges accruing after the closing. However, the note was not cancelled or delivered to Warren, it was transferred to Baer. The addition mistake here is readily apparent by examining the column of numbers itself and there is testimony the total was the result of an error. This presented a question for the trier of fact, here the trial court.
¶ 27 Baer had possession of the bearer note and, as its holder, was entitled to enforce it. 12A O.S.2001 § 3-301. No abuse of discretion or error of law occurred in the trial court finding Baer's addition error was an unintentional mistake, and evidence supports this determination. The judgment is AFFIRMED.
BUETTNER, P.J., and HANSEN, J., concur.
NOTES
[1] The note was secured by a mortgage on property at 810 Northeast 50th Street, Oklahoma City, Oklahoma, described as:

Part of Lot One (1) in Block Six (6), in the resubdivision of Blocks 1, 6 & 7, Block 5, Block 10, Lots 4, 5, 6 & 7 Block 12, ARCADY STREET and WILLIAMS STREET in THOMPSON'S WOODLAND ADDITION, in Oklahoma County, Oklahoma. as shown by the recorded plat thereof, more particularly described as follows: BEGINNING at a point on the Southwest line of said Lot 1. 34.50 feet Northwest of the Southwest corner of said Lot, and THENCE Northwest along the said Southwest line a distance of 185.50 feet to the Southwest corner of said lot; and THENCE along the Northwest and North lines of said lot to a point on the North line of said Lot, 36.82 feet West of the Northeast corner of said lot; and thence in a straight line in a Southwesterly direction to the point of beginning.
[2] A First Amended Petition filed September 26, 2006, named additional defendants who might claim a right "by virtue of a defective sale proceeding" in a probate proceeding in the administration of "the Estate of Espinola Elaine Steward, deceased." The claims against these defendants and Herbert E. Warren were dismissed without prejudice on January 7, 2008, leaving Warren as the sole remaining defendant.
[3] U.S. Bank is identified in the record as a Trustee under a Trust Agreement for the Structured Asset Securities Corporation Mortgage Pass-Through Certificates Series 2005-AR1.
[4] This misstates the facts shown in the record, which are that the payment from closing included an extra $6.00. The trial court's judgment recognizes this $6.00 discrepancy in its finding Warren still owed $9,994.00 after the November 2, 2006 closing.
[5] According to Warren's "Summary of Facts Not in Controversy" in a December 14, 2007 motion to strike or, alternatively, response to a motion for summary judgment by Baer, Warren received a notice about five days after the closing from Baer, which was then U.S. Bank's counsel, informing her Baer had made a mistake in its calculations for payoff, and the figures used in the HUD 1 Settlement Statement at closing. In her motion, Warren also states she has no funds at hand because she paid funds received at closing to her buyer's contractor for repairs to the property, and she suggests Baer "go after the title company for failing to exercise due diligence and meeting the reasonable standard of care." However, an affidavit in support of her November 29, 2006 Motion to Dismiss states she "directed" an employee at the title company "to pay $191,691.43 to satisfy the debt here upon sued."
[6] Docket sheets filed in the record list a motion to allow substitution of counsel filed February 27, 2007, and a substitution of counsel filed March 8, 2007. Neither document was designated for inclusion in the appellate record nor do the titles listed on docket sheets suggest which party's counsel changed. However, Defendants' First Amended Answer to Plaintiff's First Amended Petition filed March 30, 2007, was not delivered to Baer but instead was sent to Baer's appellate counsel, who also appeared for U.S. Bank on the motion to substitute Baer as plaintiff and thereafter for Baer as plaintiff in the district court.
[7] In its motion, Baer attributes the $10,000 mistake to "failing to include the categories of fees and costs on the Payoff Quote," and the quote "did not contain a list of all amounts due and owing under the Note and Mortgage." No evidence was offered to show any amounts were omitted, only that Baer's employee made a mistake when adding the listed amounts.
[8] The order overruling the motions for summary judgment was not designated by the parties for inclusion in the appellate record.
[9] During his testimony, Baer's president, when asked if the petition or amended petition stated a claim for a $10,000 underpayment, noted that both were filed prior to the creation of the shortage caused by the insufficient payment out of the closing. He contended the claim for default on the note was a claim for breach of contract and further amendment was not necessary while the note remained unpaid.
[10] Pursuant to 12 O.S.Supp.2004 § 727.1, the post-judgment interest is equal to the contract rate of the note, 8.55% per annum.
[11] At one point in his testimony, Baer's president responded positively to a question whether his firm was a holder in due course of the note. The evidence does not support such a status and Baer does not adopt this contention in this appeal.
[12] Section 686 provides, in pertinent part:

The court may, in the order confirming a sale of land under order of sale on foreclosure or upon execution, award or order the issuance of a writ of assistance by the clerk of the court to the sheriff of the county where the land is situated, to place the purchaser in full possession of such land ... Simultaneously with the making of a motion for an order confirming the sale or in any event within ninety (90) days after the date of the sale, the party to whom such residue shall be owing may make a motion in the action for leave to enter a deficiency judgment.