**E. J. BURKE, Plaintiff in Error,**

v.

**BENNETT DRILLING COMPANY, Defendant in Error.**

No. 39340.

Supreme Court of Oklahoma.

May 2, 1962.

Frye, Frye & Frye, by Roy Frye, Jr., Sallisaw, for plaintiff in error.

R. M. Mountcastle, Muskogee, J. Fred Green, Sallisaw, Bruce Green, Sallisaw, for defendant in error.

IRWIN, Justice.

Bennett Drilling Company commenced this action against Cook-Gray Oil & Gas Company, E. J. Burke and other defendants, unnecessary to mention, for personal judgment, foreclosure of a lien against an oil and gas lease and attorney fees. Bennett Drilling Company will be referred to as plaintiff; Cook-Gray Oil & Gas Company will be referred to as Cook-Gray; and E. J. Burke as defendant.

Plaintiff's action against Cook-Gray was based on a written drilling contract between plaintiff and Cook-Gray. The trial court found that plaintiff had carried out the terms of the contract and was entitled to judgment against Cook-Gray, less certain set-offs. Cook-Gray did not appeal and that portion of the judgment has become final.

Plaintiff's alleged action against defendant Burke is based on a letter of guaranty

wherein Burke guaranteed to pay $2,500.-00 on completion of the work provided for in the drilling contract. The trial court found that the well was "completed" within the meaning of the letter of guaranty and that Burke was liable to plaintiff for $2,500.00, the amount of the guaranty. Defendant Burke perfected his appeal from this portion of the judgment.

## FACTS

The drilling contract between plaintiff and Cook-Gray inter alia, provides:

"FRYE, FRYE & FRYE
"Attorneys At Law
"Frye Building
"Sallisaw, Oklahoma

June 12, 1953
This contract
Guaranteed
Vian State Bank
"Vian, Oklahoma
"By: S. W. Armstrong
Vice-President

"June 12, 1953

"Bennett Drilling Company
"1381 East 26th Street
"Tulsa 5, Oklahoma

"Gentlemen:

"The undersigned Cook-Gray Oil & Gas Company, hereby, proposes to have you to drill out plug, clean out, run casing and packer in existing gas well located in Section 7, Township 12 North, Range 24 East, and to drill same deeper as directed by the Company or until such time as gas or oil is produced and the Company desires to cease operations.

"The company will furnish all trucking moving expenses for your rig; * * * all special tools such as coring, fishing, logging and casing pulling; all special services, such as cementing, testing, casing running or pulling and plugging; all necessary casing, tubing, packing, etc., and water to the lease.

 * * * * * * * * * * *

"The Company will pay you for this work at day rate of $65.00 per 8-hour tour and such day work to begin as soon as the rig is on the location and to be continued until well is completed and rig torn down.

"Payment for the above work will be made by the Company when the job is completed and rig torn down.

"In the event of shut down caused by the Company, the Company shall pay for the time of said delay at the usual rate above and if shut down is caused by breakdown or other acts of contractor, shall be at the costs of the contractor.

"COOK-GRAY OIL & GAS COMPANY
"By: M. E. Cook, President

"This proposal is hereby accepted and terms agreed to by Bennett Drilling Company on this the 12th day of June, 1953.

"BENNETT DRILLING COMPANY
"By: W. N. Grant."

It is to be noted that the contract was guaranteed by the Vian State Bank.

The contract was entered into at the Vian State Bank, Vian, Oklahoma. W. N. Grant, who executed the contract for plaintiff, in a telephone conversation advised defendant that the contract would not be signed without a guarantee from the bank; the bank guaranteed the payment after defendant advised Mr. Armstrong "that he would guarantee up to and not to exceed $2,500.-00 on that contract". Pursuant to the telephone conversation, the following letter of guaranty was written by defendant.

"ALAMO LOAN AND TRUST COMPANY
"602 North St. Mary's Street
"Phone Garfield 7283
"SAN ANTONIO, TEXAS

"June 12, 1953

"Vian State Bank
"Vian, Oklahoma

"Gentlemen:

"This letter confirms my agreement over the telephone with you and Judge Roy Frye, Sr., that I would personally guarantee up to $2,500.00 of the payment to the contractor for furnishing all tools and equipment to finish drilling and setting the casing in the well of the Cook-Gray Oil and Gas Company.

"Upon completion of this well I agree to pay or see that all bills are paid for the work and labor furnished by the contractor to complete the above mentioned well and my total liability and guaranty is not to exceed the sum of $2,500.00.

"Very truly yours,
"E. J. Burke"

---

The fact that the drilling contract was guaranteed by the Vian State Bank and that defendant's letter of guaranty was addressed to Vian State Bank and not to plaintiff is not an issue in the case.

Plaintiff moved its rig to the location and after rigging up, work was thereafter done under the supervision of Cook, president and operational officer of Cook-Gray. The plug was drilled out and the well cleaned to the bottom. Cook-Gray furnished a string of casing, shoe and packer and plaintiff was directed to run the casing. About 340 feet off bottom, the pipe stuck. The evidence is in conflict with reference to the reason the pipe stuck.

In trying to pull and free the stuck pipe, the mast was pulled in. The trial court found that the collapse of the mast was due to the negligence of plaintiff and the amount charged for the time in repairing the mast was set-off in the judgment against Cook-Gray. After the mast was repaired and further unsuccessful attempts were made to pull and free the pipe, plaintiff was directed to reduce the hole and drill deeper. The hole was drilled to a depth of 1835 feet and the well was shut down for the purpose of getting a string of 4 inch pipe.

Defendant sent a string of 4½ inch pipe from Dallas, instead of 4 inch pipe, and the 4½ inch pipe would not go through the pipe stuck in the hole. Unsuccessful attempts were made to secure a string of 4 inch pipe. The well was shut down at

1835 feet and nothing further was done. The drilling rig was left over the hole for approximately 60 days after drilling operations stopped.

Cook admitted that he directed the crews to drill the hole to 1835 feet and that if he could have secured the 4 inch pipe, the same could have been run, the water sand shut off and the well tested; that he was unable to secure the 4 inch pipe; that plaintiff presented him a bill for work performed under the contract and that he approved payment.

## CONTENTIONS

Defendant contends that the court erred in finding that the well was "completed" under the terms of his letter of guaranty and in finding that he was liable to plaintiff in the sum of $2,500.00; and that the trial court erred in overruling his demurrer to the evidence of plaintiff.

To sustain these contentions defendant asserts that he guaranteed the payment of an amount not to exceed $2,500.00 to plaintiff for furnishing all tools and to finish drilling and setting the casing in the well; that he was not a party to the contract between plaintiff and Cook-Gray and was not bound by the provisions thereof, and his liability, if any, must be based solely upon his letter of guaranty; that unless the terms of his guaranty are strictly observed he is not liable; that the term "upon completion of the well" used in his letter of guaranty means drilling to the desired depth and cleaning the well so that it may produce or that it may be tested for production of oil and gas; and, that the well was not completed as required in his letter of guaranty.

## CONCLUSIONS

■ There are two instruments involved in this action: The drilling contract between plaintiff and Cook-Gray; and defendant's letter of guaranty. Since defendant was not a party to the drilling contract, his liability, if any, must be based on his letter of guaranty.

An examination of the letter of guaranty discloses that in the first paragraph defendant confirmed his agreement over the telephone with S. W. Armstrong and Judge Roy Frye, Sr. S. W. Armstrong testified that the agreement was that defendant "would guarantee up to and not to exceed $2,500.00 on the contract." Judge Frye and defendant both testified but neither refuted nor attempted to refute this testimony of S. W. Armstrong. We can only conclude that the agreement which defendant confirmed in the first paragraph of his letter of guaranty was that he "would guarantee up to and not to exceed $2,-500.00 on the contract."

This conclusion is further substantiated by the answer filed by the defendant wherein he alleged, inter alia: "That this defendant is not indebted to the plaintiff for any amount at the present time because the contract between the Cook-Gray Oil & Gas Company, and plaintiff has never been completed. * * * In addition thereto the letter of guaranty referred to above, provided that this defendant would guarantee the terms of this contract to the extent of $2,500.00 and that upon completion of the well he agreed to see that all bills were paid, however not to exceed $2,500.-00, * * * that this job has not been completed and the well has not been completed and therefore this defendant is not indebted to the plaintiff in any sum. * * *"

In the second paragraph of the letter of guaranty, defendant agreed to pay said sum "upon completion of the well". Under defendant's theory the well had to be drilled to a desired depth and the well cleaned so that it could be produced or tested for production before he was liable. We can not sustain this theory.

The drilling contract does not use the term "upon completion of the well" with reference to liability of Cook-Gray or when payment was to be made but employed the phrase that "payment * * * will be made * * * when the job is completed * * *". The job, as set forth in the contract was to drill out plug, clean out,

run casing and packer in the existing well and to drill the same deeper as directed by the company or until such time as gas or oil is produced and Cook-Gray desired to cease operation. The contract was for work at a day rate, such day work to begin as soon as the rig was on location and to be continued until the well was completed and rig torn down. Defendant does not urge that the use of the phrase "until well is completed" in the drilling contract required the well to be drilled to a certain depth and the well cleaned so that it could produce or be tested for production, nor does he contend on appeal that plaintiff did not carry out the terms of the drilling contract.

The letter of guaranty, which confirmed the agreement over the telephone, must be construed in connection with the drilling contract, and the term "upon completion of the well" has reference to and is governed by "completion of the well" under the terms of the contract. If they are not construed together, the purpose of the letter of guaranty and the intent of the parties would not only be defeated, but the agreement made over the telephone and the confirmation thereof in the letter of guaranty would be vitiated.

The trial court found that the well was "completed" within the meaning of the letter of guaranty. It is well established that the sufficiency of evidence to sustain a judgment in an action of legal cognizance will be determined in light of evidence tending to support same, together with every reasonable inference deductible therefrom, and judgment rendered in an action at law tried to the court will not be disturbed on appeal when there is competent evidence to support it. See Sparks v. Midland Supply Company, (Okl.), 339 P. 2d 1056.

We have reviewed the record and there is competent evidence reasonably tending to support the judgment rendered.

It is noted that the judgment was rendered in favor of plaintiff against Cook-Gray for $2,785.36, plus attorney fees in the sum of $278.53, and against defendant Burke for $2,500.00. Since neither party contends the trial court erred in rendering the judgment in the manner as rendered, we assume that all parties agree that plaintiff is not entitled to collect from Cook-Gray the sum of $3,063.89, and in addition thereto the sum of $2,500.00 from defendant Burke.

Judgment affirmed.

WILLIAMS, C. J., and DAVISON, HALLEY and JOHNSON, JJ., concur.

BLACKBIRD, V. C. J., and JACKSON and BERRY, JJ., dissent.