2011 OK 103

**Paul McWILLIAMS, Appellant,**

v.

**BOARD OF COUNTY COMMISSIONERS OF the County of COMANCHE, a Political Subdivision of the State of Oklahoma, Appellee.**

**No. 107,932.**

Supreme Court of Oklahoma.

Dec. 20, 2011.

---

David L. Thomas, Thomas & Terrell, PLLC, Oklahoma City, and Jerry L. Breathwit, Oklahoma City, Oklahoma for Appellant.

Michael R. Chaffin, Frailey, Chaffin, Cordell, Perryman, Sterkel & McCalla, LLP, Chickasha, Oklahoma for Appellee.

COLBERT, V.C.J.

¶1 The issue presented on certiorari review is whether a governmental subdivision is equitably estopped from denying liability where it, having previously entered into an undisclosed oral contractual agreement regarding the maintenance of the county-line road, failed to advise the plaintiff that another county, not it, bore responsibility for the road maintenance at some point prior to the expiration of the limitations period. Based on the evidence presented, this Court answers in the affirmative.

FACTS AND PROCEDURAL HISTORY

¶2 On July 26, 2003, McWilliams was injured when his motorcycle hit an area where the road had buckled causing his motorcycle to flip. The road in question adjoins Caddo and Comanche Counties. But, the precise location of the accident is in Caddo County.

¶3 McWilliams timely submitted notice of his tort claim to Comanche County via e-mail on November 4, 2003. Comanche County Commissioner, Gale Turner (Commissioner Turner), responded via e-mail on November 10, 2003, and requested "a more descriptive location of the accident." McWilliams complied.

¶4 Unbeknownst to McWilliams, Comanche and Caddo Counties entered into an oral contractual agreement regarding the maintenance of the county-line road more than twenty years ago. Pursuant to that agreement, Caddo County was responsible for maintaining the section of roadway where McWilliams' accident occurred.[1] However, the contractual agreement was oral, and no document is on file in the county records delineating the two counties' responsibilities.

¶5 Immediately after receiving notice of McWilliams' accident, Comanche County repaired the road. Later, Caddo County completely overlaid the road. No one, however, advised McWilliams that an oral roadway maintenance agreement existed between the two counties.

¶6 On January 19, 2004, prior to retaining counsel, McWilliams contacted Commissioner Turner again, and made an offer to settle his claim for $25,000. However, neither Commissioner Turner nor the insurance carrier responded and the tort claim was accordingly deemed denied pursuant to title 51, section 157(A) of the Oklahoma Statutes.[2] This action ensued.

1. Title 69 of the Oklahoma Statutes, section 621 states:

All county highways on county lines in this state shall be maintained and constructed by the counties adjoining. It shall be the duty of the board of county commissioners of each of the counties between which such roads are located to divide the roads on such county line into two parts or sections as nearly as practicable, giving due consideration to the difference of cost of constructing and maintaining each section, agreeing between themselves that each county shall undertake the work of constructing and maintaining one of the two sections. Title 69 of the Oklahoma Statutes, section 622 states:
(a) It shall be the duty of each board of county commissioners to maintain the section of each county line road assigned to it by the aforesaid agreement. The expenditures on such roads shall be governed by the laws relating to expenditures by boards of county commissioners as expenditures on roads within the boundaries of such counties.

(b) Provided, that when the board of county commissioners of any county is notified by the Board of an adjoining county that an agreement relating to division of county line roads as provided in the preceding section is desired, the boards shall within thirty (30) days of such notice proceed with the division in the manner agreed upon between the respective boards.

2. Section 157(A) states:
A person may not initiate a suit against the state or a political subdivision unless the claim has been denied in whole or in part. A claim is deemed denied if the state or political subdivision fails to approve the claim in its entirety within ninety (90) days, unless the state or political subdivision has denied the claim or reached a settlement with the claimant before the expiration of that period. If the state or a political subdivision approves or denies the claim in ninety (90) days or less, the state or political subdivision shall give notice within five (5) days of such action to the claimant at the address listed in the claim. If the state or political subdivision fails to give the notice

¶ 7 McWilliams filed suit against Comanche County in August 2004 alleging negligence in failing to properly maintain the county-line road, south of Apache and east of Highway 62/281, in a safe condition. On August 18, 2004, Comanche County answered, alleging that it "has insufficient information to either admit or deny [McWilliams'] contentions and therefore denies same, both generally and specifically."

¶ 8 On July 18, 2005, the parties were ordered to conduct mediation; but the mediation was unsuccessful.[3] On November 9, 2005—over one year after the commencement of this action and two years after the accident—Comanche County filed a combined Motion to Dismiss/Motion for Summary Judgment. For the first time, Comanche County specifically denied liability based on the Comanche–Caddo roadway maintenance agreement. And, in support thereof, attached an affidavit from Caddo County Commissioner, Carlos Squires, which claimed responsibility for the area in question. Summary judgment was granted to Comanche County in 2006. That judgment, however, was reversed by the Court of Civil Appeals by an unpublished opinion in 2007.

¶ 9 On remand, during a one-day non-jury trial, the trial court, as fact finder, heard testimony from several witnesses. McWilliams testified that on the day of the accident, he was going to visit family members. He stated that while he was familiar with the county road and its condition, he could not determine the height of area where the road had buckled. As McWilliams approached the defective area, he noticed a dog lying on the right side of the roadway. As a precaution, McWilliams navigated his motorcycle to the road's center, and hit the defective surface which caused his motorcycle to flip end-over-end. He suffered severe personal injuries and property damage.

¶ 10 McWilliams' father, Paul McWilliams, Jr. (Paul) testified that following the accident, he notified Commissioner Turner of the incident and the dangerous condition of the road. Paul testified the road was repaired the following day, but he was unsure who repaired the road. He further stated the road remained in good repair following his son's accident.

¶ 11 Commissioner Turner testified that Comanche County had never maintained or made any repairs to the road in question prior to McWilliams' accident. And, he confirmed that Comanche County's maintenance supervisor, Brian Bridges (Bridges), repaired the road after receiving notice of McWilliams' accident. Commissioner Turner further indicated Comanche County made the repairs as a courtesy to Caddo County, because the Counties traditionally made courtesy repairs for other counties if the repairs are necessary for the safety of the public.

¶ 12 Bridges testified he received a call from Comanche County's secretary about McWilliams' accident and inspected the area the following day. Bridges confirmed Caddo County was responsible for maintaining the road.

¶ 13 Caddo County Commissioner Carlos Squires verified that Caddo County was familiar with and responsible for maintaining the road where McWilliams' accident occurred. Commissioner Squires testified that sometime after McWilliams' accident, Caddo County completely overlaid the road. Commissioner Squires confirmed that the agreement with Comanche County was verbal.

¶ 14 After considering the evidence presented, the trial court held that, although the accident was caused by the road's condition, no evidence was presented to support McWilliams' contention that Comanche County was

required by this subsection, the period for commencement of an action in subsection B of this section shall not begin until the expiration of the ninety-day period for approval. The claimant and the state or political subdivision may continue attempts to settle a claim, however, settlement negotiations do not extend the date of denial unless agreed to in writing by the claimant and the state or political subdivision.

3. McWilliams alleges that at Comanche County's urging, the trial court continued the pretrial conference and ordered the parties to mediate in good faith. He further alleges that before the parties attempted to mediate, Comanche County's insurance adjuster, who purportedly is the same insurance adjustor for Caddo County, terminated the proceedings based on the Comanche–Caddo County agreement.

responsible. In so ruling, the trial court determined that the facts presented were insufficient to support estoppel, and specifically stated:

> I don't think the facts of this case support estoppel. I don't—I don't approve of how this all occurred with Mr. McWilliams. I think he probably should have been given some more information, but, you know, the other side of that is that the commissioner or some employees of his, is it their duty to advise somebody about the proper place for a lawsuit; probably not.

¶ 15 The trial court concluded McWilliams filed his lawsuit against the wrong county and refused to hold Comanche County liable for McWilliams' injuries based upon the repairs it made to the road after the accident. The court determined the evidence was insufficient to establish, by a preponderance of the evidence, that Comanche County owed a duty to McWilliams, nor was any duty breached by it. The Court of Civil Appeals affirmed. This appeal followed.

## STANDARD OF REVIEW

¶ 16 When a trial court's judgment from a bench trial depends on equitable principles, this Court may reexamine the record and weigh the evidence. *K & H Well Serv. v. Tcina, Inc.,* 2002 OK 62, ¶ 9, 51 P.3d 1219, 1223. This Court will disturb the trial court's judgment when its ruling is clearly against the weight of the evidence or contrary to established principles of equity. *Wetsel v. Johnson,* 1970 OK 69, ¶ 7, 468 P.2d 479; *Merritt v. Merritt,* 2003 OK 68, ¶ 7, 73 P.3d 878, 882.

## ANALYSIS

¶ 17 As a preliminary matter, the trial court erred in binding McWilliams to the Comanche–Caddo County roadway oral maintenance agreement. The Legislature placed the onus of maintaining and constructing "[a]ll county highways on county lines in this state ..." on the adjoining counties. Okla. Stat. tit. 69, § 621 (2001). Section 622 permits the counties, by agreement, to predetermine which sections of the county-line road they will maintain and sets forth the manner of enforcement. Okla. Stat. tit. 69, § 622 (2001).

¶ 18 Comanche and Caddo Counties entered into an oral agreement more than twenty years ago. The parties concede that no written instrument is on file either memorializing their agreement or making the terms of that agreement readily ascertainable to the public. There is nothing in sections 621 and 622 that prohibits an oral contractual agreement between the contracting counties. Equally, no basis exists to bind unsuspecting non-contracting parties to the counties' undiscoverable agreement. *See* Okla. Stat. tit. 69, §§ 621–622 (2001); *See generally, Morgan v. Galilean Health Enter., Inc.,* 1998 OK 130, ¶ 13 & n. 26, 977 P.2d 357, 364, (citing *Green Bay Packaging v. Preferred Packaging,* 1996 OK 121, ¶ 48, 932 P.2d 1091, 1099 (where the court stated that "[a] contingent-fee arrangement is a matter between the client and the client's attorney. It is not binding on the court")); *Burke v. Bennett Drilling Co.,* 1962 OK 102, 371 P.2d 477.

¶ 19 Based on the facts presented, Comanche County is estopped to deny liability to McWilliams. "Equitable estoppel is generally understood to prevent one party from taking a position which is inconsistent with an earlier action that places the other party at a disadvantage." *Strong v. State ex rel. Okla. Police Pension & Ret. Bd.,* 2005 OK 45, ¶ 9, 115 P.3d 889, 893.

> The essential elements necessary to establish equitable estoppel are: first, there must be a false representation or concealment of facts; second, it must have been made with actual or constructive knowledge of the real facts; third, the party to whom it was made must have been without knowledge, or the means of discovering the real facts; fourth, it must have been made with the intention that it should be acted upon; and fifth, the party to whom it was made relied on, or acted upon it to his or her detriment.

*Sullivan v. Buckhorn Ranch P'ship,* 2005 OK 41, ¶ 31, 119 P.3d 192, 202. A party's intent to misrepresent or conceal facts may be inferred However, a "stronger, more compelling policy or interest must be advanced be-

fore estoppel may be invoked against either the state or a public agency." *Strong,* 2005 OK 45, ¶ 9, 115 P.3d at 893.

¶ 20 Here, Comanche County's actions served to conceal the relevant fact that it had an oral contractual agreement with Caddo County to maintain the section of road where McWilliams' accident occurred. Comanche County accepted McWiliams' notice of tort claim, made inquiries as to the exact location, and immediately repaired the road. McWilliams' damages claim was deemed denied, not by Comanche County's insistence that it was not the responsible party, but by operation of law.[4] Then, at trial, Comanche and Caddo County Commissioners testified that each Commissioner had actual knowledge of the oral agreement and that Caddo County was the responsible party. Yet, Comanche County withheld this vital fact from McWilliams for over two years. The secret nature of the agreement and Comanche County's dilatory conduct robbed McWilliams of any means to discover Caddo County's responsibility to maintain that section of the county-line road where his accident occurred.

¶ 21 Even after Comanche County's initial request to McWilliams regarding the accident location, its subsequent repairs, and notification to Caddo County concerning the road's dangerous conditions, Comanche County took no steps to advise McWilliams of the Comanche–Caddo County oral agreement. Instead, Comanche County willfully lulled McWilliams along until ordered to mediate McWilliams' claim—all to McWilliams'

detriment. A governmental entity cannot escape liability by concealing facts and implying to a plaintiff that it, not another, is responsible for that plaintiff's injuries. In doing so, the lulling governmental entity should be estopped to deny liability. And, under these circumstances, both counties may be liable for an injury caused by the negligent maintenance of the county-line road.

¶ 22 While this Court recognizes that a private defendant is under no obligation to voluntarily reveal other potential defendants in the preliminary stages of an action, a governmental subdivision may be obligated to do so under certain circumstances where, as here, equity demands it. In this case, Comanche County should have revealed the possibility that Caddo, not it, bore responsibility for the road maintenance at some point prior to the expiration of the statutorily prescribed time bar. Such inaction and misrepresentations that previously were to McWilliams' detriment, now should be to Comanche County's detriment.

¶ 23 To make matters more egregious, the trial court failed to take notice of the record before it and substitute Caddo County as the proper party-defendant under title 12, section 2015(C) of the Oklahoma Statutes.[5] In cases such as these, where a plaintiff is mistaken as to the identity of a defendant, the inclusion of the correct party-defendant is proper. *See Pan v. Bane,* 2006 OK 57, ¶ 6, 141 P.3d 555, 558; *See also* Okla. Stat. tit. 12, § 2015(C) (2001). The mistake

---

4. *See* Okla. Stat. tit. 51, § 157(A) (2001).

5. An Amendment of a pleading relates back to the date of the original pleading when:

    1. Relation back is permitted by the law that provides the statute of limitations applicable to the action; or

    2. The claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading; or

    3. The amendment changes the party or the naming of the party against whom a claim is asserted if paragraph 2 of this subsection is satisfied and, within the period provided by subsection I of Section 2004 of this title for service of the summons and petition, the party to be brought in by amendment:

    a. Has received such notice of the institution of the action that he will not be prejudiced in maintaining his defense on the merits; and

    b. Knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against him.

An amendment to add an omitted counterclaim does not relate back to the date of the original answer.

The delivery or mailing of process to the Attorney General of Oklahoma, or an agency or officer who would have been a proper defendant if named, satisfies the requirements of subparagraphs a and b of this paragraph with respect to the State of Oklahoma or any agency or officer thereof to be brought into the action as a defendant.

Okla. Stat. tit. 12, § 2015(C) (2001).

must not be one of strategy or negligence, but one "where a plaintiff intended to sue the proper party but misidentified or misnamed him or her in the original pleading and the new party knew within time that he or she would have been sued but for the plaintiff's mistake." *Pan v. Bane,* 2006 OK 57, ¶ 25, 141 P.3d 555, 563; *Krupski v. Costa Crociere,* — U.S. ——, 130 S.Ct. 2485, 177 L.Ed.2d 48 (2010). Such a concept is not foreign to this jurisdiction's cognizance, especially where a governmental agency is concerned. *See Calvert v. Tulsa Pub. Schs., Indep. Sch. District No. 1,* 1996 OK 106, ¶ 10, 932 P.2d 1087, 1090 (where the court held that "[t]he Governmental Tort Claims Act specifically expresses the intent that Oklahoma procedural rules shall apply unless in conflict with the Act")(superseded by statute on other grounds).[6]

¶ 24 The cornerstone of the Governmental Tort Claims Act (GTCA) is notice. *See* Okla. Stat. tit. 51, § 151–200 (2001). The GTCA precludes any tort action against a political subdivision unless the plaintiff has provided notice and given the political subdivision the opportunity to accept or deny the claim. *See* Okla. Stat. tit. 51, § 157 (2001). In enacting the GTCA, it is clear that the Legislature intended not only to make the political subdivisions aware of an impending claim, but also provide the political subdivision with an opportunity to promptly investigate, assess any fiscal liability, and explore settlement options prior to a plaintiff commencing a lawsuit. *Hathaway v. State ex rel. Med. Research & Technical Auth.,* 2002 OK 53, 49 P.3d 740. Rather than rely on a hyper-technical application of the Act, this Court will consider the purpose behind the GTCA and apply a more reasoned approach sounding in equity. It is without question that section 2015(C) encourages liberal substitution of parties to relate back to the original filing date. And, the

application thereof does not violate the GTCA.

■ ¶ 25 In applying section 2015(C) to the facts of this case, it should be noted that the addition of Caddo County as a party-defendant clearly arose out of the same occurrence established in the original pleading, specifically, McWilliams' motorcycle accident caused by the county road's defective area. Next, the addition of Caddo County in no way would prejudice its defense. Caddo County, upon receiving notice of the impeding action from Comanche County, investigated and prepared an affidavit which certified its familiarity with the accident location; claimed responsibility for that area; and later testified that it has historically had "trouble" with that "particular spot." The limitations defense is not intended to protect defendants from pleading mistakes occasioned by the plaintiff in an action that was otherwise timely. Rather, the purpose of the limitations period is to extinguish antiquated claims. *Hawk Wing v. Lorton,* 2011 OK 42, 261 P.3d 1122.

¶ 26 McWilliams timely commenced his action against Comanche County, whom he believed was the proper party-defendant. Comanche County and Caddo County share an identity of interests. "Identity of interest generally means that the parties are so closely related in their business operations or other activities that the institution of an action against one serves to provide notice of the litigation to the other." 6A C. Wright, A. Miller, M. Kane, & R. Marcus, *Federal Practice and Procedure* § 1499 (3d ed. 1990).[7] Here, the counties' statutory duty to maintain the county road, mutual agreement in its execution, and resulting conduct are identical threads of interests that both counties share. In all, their identity of interest is sufficient to warrant the inclusion of Caddo County and

---

**6.** "Section 2015 is identical to Rule 15 of the Federal Rules of Civil Procedure, and the federal court's construction is instructive." *Roth v. Mercy Health Ctr., Inc.,* 2011 OK 2, ¶ 13, 246 P.3d 1079, 1084. Federal courts that have interpreted Rule 15 permit the amendment of party-defendants to relate back to the date of the original filing even in tort claims against the government. *Roman v. Townsend,* 224 F.3d 24, 28 (1st Cir.2000) (where the court determined that substitution would be appropriate had the proper party received notice).

**7.** The identity of interest concept [is] a judicial gloss on Rule 15(c)(1), [that] provides that the institution of [an] action serves as constructive notice of the action to the parties added after the limitations period expired, when the original and added parties are so closely related in business or other activities that it is fair to presume the added parties learned of the institution of the action shortly after it was commenced.

*Hernandez Jimenez v. Calero Toledo,* 604 F.2d 99, 102 (1st Cir.1979)

relate back to the original filing date. No prejudice or loss of opportunity can be occasioned by Caddo County under these circumstances.[8] Yet, the trial court failed to hold either county responsible based on an unfounded, illogical, and antiquated technicality. It is patently clear that by Caddo County's own conduct of overlaying the road after Comanche County's initial repairs, that Caddo County knew or had reason to know, but for McWilliams mistakenly naming Comanche County, the action would have been commenced against it.

## CONCLUSION

¶ 27 Today, we recognize the application of the relation back doctrine found in section 2015(C) to the GTCA. *See Pan v. Bane*, 2006 OK 57, 141 P.3d 555. The evidentiary record substantiates that the undisclosed agreement between Comanche County and Caddo County coupled with Comanche County's dilatory conduct, prevented McWilliams of any means to discover Comanche County's true role in the litigation. As a matter of public policy, Comanche County is now estopped to deny liability of McWilliams' claim.

CERTIORARI PREVIOUSLY GRANTED; OPINION OF COURT OF CIVIL APPEALS VACATED; TRIAL COURT REVERSED; CAUSE REMANDED FOR PROCEEDINGS CONSISTENT WITH THIS OPINION.

CONCUR: COLBERT, V.C.J.; KAUGER, WATT, WINCHESTER, EDMONDSON, REIF, COMBS, GURICH, JJ.

CONCURS IN RESULT: TAYLOR, C.J.

---

**8.** This Court takes this opportunity to note that the instant case is on all fours with the following:

If the originally named defendant or the party sought to be added either knowingly allows plaintiff to think plaintiff has sued the proper party or actually misleads plaintiff as to the identity of the party that should be held responsible, the new defendant will be estopped from asserting a statute-of-limitations defense. For example, when the named defendant files a general denial and appears prepared to defend on the merits, but after the expiration of the limitation period suddenly claims it is not the party to be sued, there is a presumption that the true defendant received the notice required by the rule, especially if there is a strong business or personal relationship between that party and the originally named defendant.

6A C. Wright, A. Miller, M. Kane, & R. Marcus, *Federal Practice and Procedure* § 1500 (1990).